# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT WISCONSIN

Clark Technology, LLC and Clark Engineering
Corporation,

              Plaintiffs,

vs.

Corncob, Inc. and Pro-Equipment, Inc.,

              Defendants.

**Case No. _____**

**COMPLAINT**

COME NOW Plaintiffs Clark Technology, LLC ("Clark Tech.") and Clark Engineering Corporation ("Clark Engineering" and together with Clark Tech., "Plaintiffs"), and as and for their Complaint against Defendants Corncob, Inc. and Pro-Equipment, Inc. ("Pro-Equipment" and together with Corncob, Inc., "Defendants"), state and allege as follows:

## <u>PARTIES</u>

1.     Clark Tech. is a Delaware limited liability company with a principal place of business at 12755 Hwy. 55, Suite 100B, Plymouth, Minnesota 55441. Each of Clark Tech.'s members are individuals who reside outside of the State of Wisconsin.

2.     Clark Engineering is a Minnesota corporation with a principal place of business at 12755 Hwy. 55, Suite 100, Plymouth, Minnesota 55441.

3.     Corncob, Inc. is a Wisconsin Corporation with its principal place of business located at 819 W. College Ave., Waukesha, WI, 53186.

4.     Pro-Equipment, Inc. is a Wisconsin Corporation with its principal place of business located at 819 W. College Ave., Waukesha, WI, 53186.

## JURISDICTION AND VENUE

5.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this action because it states a claim under 41 U.S.C. § 1125.

6.     Additionally and alternatively, pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action in that the amount in controversy exceeds the sum or value of Seventy-Five Thousand and No/100 Dollars ($75,000), exclusive of interest and costs, and is between citizens of different States.

7.     This Court has personal jurisdiction over Defendants because they are each Wisconsin corporations with their principal places of business located in Wisconsin, and more particularly, within this district.

8.     Pursuant to 28 U.S.C. § 1391(a), venue is properly established in this judicial district.

## GENERAL ALLEGATIONS

**A.     The Parties.**

9.     Clark Engineering is a multi-disciplinary engineering firm with decades of experience offering services that include structural and civil engineering, environmental services, landscape architecture, resource recovery, renewable engineering services, and project management.

10.     Clark Tech. is in the business of providing innovative and sustainable solutions for clean water, wastewater, recycling, integrated waste management, and waste-to-energy systems, including, but not limited to Clark Tech.'s Leachbuster® water and wastewater treatment system.

11.     Clark Tech. holds a U.S. patent application related to the Leachbuster® system, published as U.S. Publication No. 2016/0030891 (the "Patent Application").   The Patent Application was filed on July 31, 2015 and published on February 4, 2016.

2

12.     Pro-Equipment is an equipment manufacturer and reseller.

13.     Since 2013, Pro-Equipment and its subcontractors have been the sole supplier of the Leachbuster® water and wastewater treatment system for Clark Engineering, and later Clark Tech.

14.     On information and belief, at all relevant times, Pro-Equipment utilized subcontractors to manufacture most or all of the component parts of the Leachbuster® water and wastewater treatment systems it supplied for Clark Engineering or Clark Tech.

15.     Pro-Equipment is also the patent holder and owner of a wastewater treatment product known as "Corncob II."

16.     At relevant times, Pro-Equipment actively advertised and marketed the "Corncob II" product as a Pro-Equipment product.

17.     Pro-Equipment manufactures the Corncob II product either directly or through subcontractors.

18.     Corncob, Inc. is a subsidiary of Pro-Equipment and is in the business of selling Pro-Equipment's Corncob II product.

**B.      Pro-Equipment's Contract With Clark Engineering Regarding The Kandiyohi County Project.**

19.     In or about 2014, Clark Engineering entered into an agreement with Pro-Equipment pursuant to which Pro-Equipment agreed to manufacture and Clark Engineering agreed to purchase a Leachbuster® water treatment system for a landfill wastewater treatment project in Kandiyohi County, Minnesota (the "Kandiyohi County Project").

20.     Pursuant to the parties' agreement, Pro-Equipment agreed to supply Clark Engineering with a Leachbuster® system that could process an input of 20,000 gallons of landfill

3

leachate each day and that could produce 90/10 liquids/solids output when input leachate was at 1900 total dissolved solids.

21. Specifically, while Clark Engineering designed the Leachbuster® system that would be installed at the Kandiyohi County landfill, Pro-Equipment was responsible for "sizing" the system—i.e., determining how many Leachbuster® skids were needed to process 20,000 gallons of landfill leachate each day and to produce 90/10 liquids/solids output when input leachate was at 1900 total dissolved solids.

22. Pro-Equipment warranted and guaranteed to Clark Engineering that the Leachbuster® system it manufactured for Clark Engineering would be able to process 20,000 gallons of landfill leachate each day.

23. Pro-Equipment warranted and guaranteed to Clark Engineering that the Leachbuster® system it manufactured for Clark Engineering would be able to produce 90/10 liquids/solids output when input leachate was at 1900 total dissolved solids.

24. Based on Pro-Equipment's agreement, warranties and guarantees, Clark Engineering entered into a contract with Apex Efficiency Solutions, SBC ("Apex") to sell it a Leachbuster® system for use at the Kandiyohi County Project.

25. Based on Pro-Equipment's agreement, warranties and guarantees, Clark Engineering represented to Apex that the Leachbuster® system that Pro-Equipment was manufacturing for the Kandiyohi County Project would be able to process 20,000 gallons of landfill leachate each day.

26. Absent Pro-Equipment's agreement, warranties and guarantees, Clark Engineering would not have made these representations to Apex regarding the capacity of the Leachbuster® system being manufactured for the Kandiyohi County Project.

4

**C.      Apex Claims The Leachbuster® System Supplied For The Kandiyohi County Project Is Undersized.**

27.      Pro-Equipment manufactured a Leachbuster® system for the Kandiyohi County Project and supplied it to Clark Engineering, which installed the system at the Kandiyohi County Project.

28.      After the Leachbuster® system was installed as part of the Kandiyohi County Project, Apex raised concerns that the Leachbuster® system supplied by Pro-Equipment was not performing as represented, warranted and guaranteed by Pro-Equipment.  Specifically, Apex contended that the Leachbuster® system supplied by Pro-Equipment did not have the capacity to process 20,000 gallons of landfill leachate each day.

29.      In addition, on September 12, 2018, Apex's counsel sent Clark Engineering a letter threatening to commence a lawsuit against Clark Engineering regarding the performance of the Leachbuster® system at the Kandiyohi County Project.

30.      Clark Engineering denies Apex's claim that the Leachbuster® system supplied by Pro-Equipment for the Kandiyohi County Project is not performing as represented, warranted or guaranteed by Clark Engineering to Apex.

31.      However, to the extent Apex can demonstrate that the Leachbuster® system supplied by Pro-Equipment for the Kandiyohi County Project is not performing as represented, warranted and guaranteed by Clark Engineering, then Pro-Equipment has breached its agreement with Clark Engineering, and Clark Engineering is entitled to recovery from Pro-Equipment, among other things, all costs and damages that Clark Engineering has incurred and will incur as a result of any such failure of the Leachbuster® system to perform as represented, warranted and guaranteed by Pro-Equipment.

32. Clark Engineering gave Pro-Equipment notice of Apex's claim, if notice was required.

33. To the extent Apex can demonstrate that the Leachbuster® system supplied by Pro-Equipment for the Kandiyohi County Project is not performing as represented, warranted and guaranteed by Pro-Equipment, Pro-Equipment's conduct has thrust Clark Engineering into a dispute and litigation with Apex and has and will cause Clark Engineering to incur costs, including attorneys' fees, to investigate and respond to Apex's claims.

34. The costs, including attorneys' fees, that Clark Engineering has incurred to investigate and respond to Apex's claims should be borne by Pro-Equipment if Apex proves that the Leachbuster® system supplied by Pro-Equipment failed to perform as represented, warranted and guaranteed by Pro-Equipment, including if Apex proves that the Leachbuster® system was improperly sized for the Kandiyohi County Project.

**D.      Pro-Equipment's Breach Of Its Contract With Clark Tech. Regarding The Monroe County Project.**

35. In 2013, Pro-Equipment promised and represented to Clark Engineering that it would not circumvent Clark Engineering's business relationship with Apex and that it would not work with Apex on any project except as a subcontractor to Clark Engineering.

36. At the time Clark Tech. was formed in 2015, and again in 2016 and 2017, to entice Clark Tech. to continue using Pro-Equipment as the manufacturer of the Leachbuster® system for the projects that Clark Tech. was pursuing, Pro-Equipment promised and represented to Clark Tech. and Clark Engineering that it would not circumvent Clark Tech.'s business relationship with Apex or Clark Tech.'s prospective customers and that it would not work with Apex on any project except as a subcontractor to Clark Tech. or Clark Engineering.

6

37. Clark Tech. agreed to continue using Pro-Equipment as its manufacturing partner based on these representations.

38. Clark Tech. would not have continued using Pro-Equipment as its manufacturing partner for any project absent Pro-Equipment's promises not to circumvent Clark Tech.'s relationship with Apex or Clark Tech.'s prospective customers and promise not to work with Apex on any project except as a subcontractor to Clark Tech. or Clark Engineering.

39. In or about 2015, Clark Tech. and Apex agreed to jointly pursue a wastewater treatment project for Monroe County, Wisconsin (the "Monroe County Project") which also contemplated the installation of a Leachbuster® system and associated systems.

40. Based on Pro-Equipment's promises and agreement not to circumvent Clark Tech.'s business relationship with Apex and not to work on any project with Apex except as a subcontractor to Clark Tech. or Clark Engineering, Clark Tech. agreed to use Pro-Equipment as its manufacturing partner for the Monroe County Project.

41. In or about June 2017, without informing Clark Tech. or Clark Engineering, Pro-Equipment began intentionally circumventing Clark Tech. and working with Apex and Corncob, Inc. on the Monroe County project.

42. Specifically, despite its promises to Clark Tech., Pro-Equipment agreed to manufacture several "Corncob II" products for Apex to sell in connection with the Monroe County Project, with the "Corncob II" products replacing the Leachbuster® system in the design created by Clark Tech. for the Monroe County Project.

43. No Corncob II product can be sold or manufactured without Pro-Equipment's authorization.

7

44. Pro-Equipment's conduct constitutes a breach of its agreement with and promises to Clark Tech.

45. Clark Tech. has been damaged by Pro-Equipment's breach of its agreement and promises to Clark Tech. because Pro-Equipment's conduct caused Clark Tech. to lose the sale of a Leachbuster® system in connection with the Monroe County Project.

**E.  Pro-Equipment's Breach Of Its Contract With Clark Tech. Regarding The Northern Star Co. Project.**

46. In or about 2015, Clark Tech. and Apex agreed to jointly pursue a wastewater treatment project for Northern Star Co. ("NSC") in Chaska, Minnesota (the "NSC Project") which contemplated the installation of a Leachbuster® system and associated systems.

47. Based on Pro-Equipment's promises and agreement not to circumvent Clark Tech.'s business relationship with Apex and not to work on any project with Apex except as a subcontractor to Clark Tech. or Clark Engineering, Clark Tech. agreed to use Pro-Equipment as its manufacturing partner for the NSC Project.

48. In late 2017, without informing Clark Tech. or Clark Engineering, Pro-Equipment began circumventing Clark Tech. and working directly with Apex and Corncob, Inc. on the NSC Project.

49. Specifically, despite its promises to and agreement with Clark Tech., Pro-Equipment agreed to manufacture several "Corncob II" products for Apex to sell in connection with the NSC Project, with the "Corncob II" products replacing the Leachbuster® system in the design created by Clark Tech. for the NSC Project.

50. Pro-Equipment's conduct constitutes a breach of its agreement with and promises to Clark Tech.

51.     Clark Tech. has been and will be damaged by Pro-Equipment's breach of its agreement with and promises to Clark Tech.

**F.      Pro-Equipment And Corncob, Inc. Induce Apex To Breach Its Obligations Under The Marketing Agreement.**

52.     In February 2015, Apex and Clark Tech. executed that certain Non-Exclusive Marketing Agreement (the "Marketing Agreement")

53.     Pursuant to the Marketing Agreement, Apex agreed to, among other things, promote Clark Tech.'s products and services to Apex's customers and act in good faith and deal fairly with Clark Tech. in connection with Apex's promotion of Clark Tech.'s products and associated services.

54.     The Marketing Agreement also contained an agreement by Apex and Clark Tech. that they would not circumvent each other and work with business associates, clients and other third parties introduced by the other party.

55.     At the time Clark Tech. and Apex began jointly pursuing the Monroe County Project and the NSC Project, Douglas Hwang and Pro-Equipment were each business associates of Clark Tech and third-parties that had been introduced to Apex by the principals of Clark Tech.

56.     At the time Clark Tech. and Apex began jointly pursuing the Monroe County Project and the NSC Project, Clark Tech. had the business relationship with Douglas Hwang and Pro-Equipment, not Apex, and Clark Tech. introduced Douglas Hwang and Pro-Equipment to Apex in connection with and for the purposes of the Monroe County Project and the NSC Project.

57.     Because Clark Tech. introduced Douglas Hwang and Pro-Equipment to Apex for purposes of the Marketing Agreement for both the Monroe County Project and the NSC Project, Apex had a contractual duty not to circumvent Clark Tech. or to work with Douglas Hwang and/or Pro-Equipment.

9

58.     Pro-Equipment and Douglas Hwang were each aware of Apex's contractual obligation to Clark Tech.

59.     In or about June 2017, Pro-Equipment and Douglas Hwang, individually and through Pro-Equipment's wholly owned and controlled subsidiary, Corncob, Inc., intentionally interfered with Clark Tech.'s contractual and/or prospective contractual relationships with Apex by inducing Apex's breach of its obligations under the Marketing Agreement with Clark Tech.

60.     Among other things, Pro-Equipment and Corncob, Inc. attempted to and eventually did convince Apex to work with Pro-Equipment and Douglas Hwang in violation of the requirements of the Marketing Agreement.

61.     Clark Tech. has been injured by Pro-Equipment and Corncob, Inc.'s conduct.

**G.     Pro-Equipment And Corncob, Inc.'s Tortious Interference With Clark Tech.'s Contractual And Prospective Contractual Relationship With Apex and Monroe County, Wisconsin.**

62.     As described herein, Clark Tech. had a contractual or prospective contractual relationship with Apex and Monroe County, Wisconsin in connection with the Monroe County Project.

63.     Pro-Equipment and Douglas Hwang were each aware of Clark Tech.'s contractual relationship or prospective contractual relationship with Apex and Monroe County, Wisconsin.

64.     In or about June 2017, Pro-Equipment and Douglas Hwang, individually and through Pro-Equipment's wholly owned and controlled subsidiary, Corncob, Inc., intentionally interfered with Clark Tech.'s contractual and/or prospective contractual relationships with Apex and Monroe County, Wisconsin by attempting to steal the Monroe County Project for themselves and at the expense of Clark Tech.

65.     Clark Tech. has been injured by Pro-Equipment and Corncob, Inc.'s conduct.

**H.     Pro-Equipment And Corncob, Inc.'s Tortious Interference With Clark Tech.'s Contractual And Prospective Contractual Relationship With Apex and NSC.**

66.     Apex and Clark Tech. reached an enforceable agreement on or about October 6, 2017 pursuant to which Apex agreed to purchase a Leachbuster® system and associated systems for the NSC Project.

67.     On or about November 17, 2017, NSC and Apex executed that certain Agreement for Installation and Guaranteed Performance of Wastewater Treatment System which also contemplated the purchase and installation of a Leachbuster® system and associated systems for the NSC Project.

68.     On November 27, 2017, Apex and Clark Tech. agreed to certain amendments to their prior agreement, including amendments relating to the specific components of the system that would accompany the Leachbuster® system that Apex had agreed to purchase for the NSC Project.

69.     On or about November 28, 2017, NSC and the Twin Cities' Metropolitan Council ("Met Council") executed that certain Industrial Pretreatment Service Contract for Design, Construction, Management, and Lease of a Wastewater Pretreatment Facility between Metropolitan Council and Northern Star Co. pursuant to which the Met Council Environmental Services Committee ("MCES") committed $11.3 million in Industrial Pretreatment Incentive Program ("IPIP") financing for the NSC Project (the "Met Council Contract"). The Met Council Contract expressly contemplated the installation of the Leachbuster® system and associated systems.

70.     Pro-Equipment and Corncob, Inc. were aware, at all relevant times, of Clark Tech.'s agreements with Apex and that such agreements required Apex to purchase a Leachbuster® system and associated systems for the NSC Project.

71. Pro-Equipment and Corncob, Inc. were aware, at all relevant times, of Apex's agreement with NSC and that such agreement required Apex to purchase a Leachbuster® system and associated systems for the NSC Project from Clark Tech.

72. Pro-Equipment and Corncob, Inc. were also aware, at all relevant times, that Plaintiffs were intended third-party beneficiaries of Apex's contract with NSC.

73. Pro-Equipment and Corncob, Inc. were aware, at all relevant times, of NSC's contract with the Met Council and that such contract contemplated the purchase and installation of a Leachbuster® system and associated systems.

74. In late 2017, Pro-Equipment and Corncob, Inc. intentionally interfered with Plaintiffs' contractual and/or prospective contractual relationships with Apex and NSC by attempting to steal the NSC Project for themselves and at the expense of Plaintiffs.

75. Among other things, Pro-Equipment and Corncob, Inc. attempted to and eventually did convince Apex to substitute "Corncob II" for the Leachbuster® system in the design created by Clark Tech. for the NSC Project despite Pro-Equipment's prior agreement with Clark Tech. and Clark Engineering not to engage in such conduct and its contemporaneous representations that it was not doing so and would not do so.

76. Clark Tech. has been injured by Pro-Equipment and Corncob, Inc.'s conduct.

I. **Pro-Equipment And Corncob, Inc.'s Conduct Thrusts Plaintiffs Into Litigation With Apex And Causes Substantial Damages To Plaintiffs.**

77. Pro-Equipment's and Corncob, Inc.'s above-described conduct has thrust Plaintiffs into litigation with Apex and forced them to incur attorneys' fees and other costs to protect their rights.

78. Pro-Equipment's and Corncob, Inc.'s above-described conduct caused Clark Tech. to lose the Monroe County Project, resulting in lost revenue to Clark Tech. and Clark Engineering.

79. Further, to the extent Pro-Equipment and Corncob, Inc. are successful in stealing the NSC Project from Clark Tech., Pro-Equipment's and Corncob, Inc.'s conduct will cause damages to Clark Tech. in the amount of its expected profit from the NSC Project and other damages and will result in lost revenue to Clark Engineering.

80. Pro-Equipment and Corncob, Inc. were not justified or privileged to interfere with Plaintiffs' contractual and prospective contractual relationships because, among other things, they were privy to confidential information and strategies used by Plaintiffs to secure their contractual relationships with Apex, Monroe County, Wisconsin, and NSC, knew such information was confidential, and had a duty to protect that information and not use the information against Plaintiffs.

81. Further, Douglas Hwang, the owner of both Pro-Equipment and Corncob, Inc. had repeatedly promised and agreed not to circumvent Plaintiffs' relationship with Apex, and Plaintiffs relied on those representations in continuing to provide confidential information to Hwang and in continuing to work with Pro-Equipment.

82. Corncob, Inc. and Pro-Equipment also intentionally misled Plaintiffs in December 2017 by representing that Pro-Equipment was not working and would not work directly with Apex when, unbeknownst to Plaintiffs, Pro-Equipment was already engaged in that conduct.

83. Specifically, in early December 2017, Douglas Hwang met with representatives of Plaintiffs to address Plaintiffs' concern that Apex was attempting to circumvent Clark Tech. by contacting Pro-Equipment and its affiliates directly on projects.

84. During the meeting, Douglas Hwang represented that he understood and agreed he and his affiliates could not work directly with Apex without Plaintiffs' approval and specifically

represented that he would seek a written waiver or permission from Clark Tech. before working directly with Apex on any project.

85. Plaintiffs' representatives confirmed Douglas Hwang's representations in writing on December 6, 2017.

86. On December 7, 2017, Douglas Hwang responded and raised no objection to or dispute with Plaintiffs' recitation of the representations he had made to Plaintiffs. Hwang further expressly represented that "From what I know, APEX isn't intending to circumvent Clark Tech and instead [is] wanting to continue working together."

**J.  Pro-Equipment, Corncob, Inc. And Apex Misrepresent The Cost Of The Corncob II To Mislead NSC And The Met Council.**

87. In 2017, Clark Tech. and Clark Engineering provided material assistance to NSC's effort to secure IPIP financing from the Met Council based on NSC and Apex's express and implicit representations that the Project would include a Leachbuster® system and associated systems.

88. NSC was able to secure $11.3 million in IPIP financing for the NSC Project largely as a result of the efforts, commitments and guarantees made by Plaintiffs.

89. Among other things, Plaintiffs designed a workable water treatment system, provided key system performance warranties/guarantees, and helped convince MCES that the NSC Project was qualified for IPIP funding.

90. In order to steal the NSC Project from Plaintiffs, Defendants and Apex had to convince both NSC and the Met Council to permit them to switch technologies and use the Corncob II instead of the Leachbuster® system.

91.     Defendants and Apex had to convince NSC and the Met Council to permit them to switch technologies without losing the IPIP financing because loss of the IPIP financing would end the NSC Project.

92.     Corncob Inc. advertises that its Corncob II requires "30% less capital investment" than other equivalent membrane systems.

93.     Despite its significant alleged cost savings, Defendants and Apex did not disclose to NSC that the Corncob II would cost 30% less and in fact, on information and belief, falsely represented to NSC that the cost of the Corncob II system was the same as the cost of the contemplated Leachbuster® system and associated systems.

94.     On information and belief, Defendants and Apex made these false representations because doing so meant that Apex and Defendants would make more profit on the NSC Project— i.e., they received the same payment from NSC on a system that actually required less capital cost than the Leachbuster® system and associated systems.

95.     Defendants and Apex further attempted to increase their profits by using Plaintiffs' designs and plans in connection with the NSC Project without compensating Plaintiffs.

96.     Defendants and Apex failed to disclose to NSC that they intended to further increase their profits by using Plaintiffs' designs and plans without compensating Plaintiffs.

97.     Pro-Equipment and Corncob, Inc. intentionally misled NSC and the Met Council regarding the true cost of switching from Leachbuster® to Corncob II, so that they could keep the IPIP financing in place and significantly increase their profits at the expense of Plaintiffs.

98.     On information and belief, Apex, Corncob, Inc. and Pro-Equipment conspired to inflate the price of the Corncob II system for the NSC Project so that neither NSC nor the Met Council would know the true price of the Corncob II system.

99.    On information and belief, the Met Council would not have permitted the change in technology had it known of Apex's, Corncob, Inc.'s and Pro-Equipment's misrepresentations.

100.    On information and belief, NSC would not have permitted the change in technology had it known of Apex's, Corncob, Inc.'s and Pro-Equipment's misrepresentations.

101.    On information and belief, the Met Council would not have permitted all of the IPIP financing to remaining in place had it known of Apex's, Corncob, Inc.'s and Pro-Equipment's misrepresentations.

## COUNT I
## VIOLATION OF THE LANHAM ACT
### [41 U.S.C. § 1125(A)(1)]

102.    Plaintiffs hereby incorporate by reference paragraphs 1-18 and realleges them as though fully set forth herein

103.    Since October 11, 2016 and continuing to the date of this Complaint, Corncob, Inc. has maintained and continues to maintain commercial advertising and promotion material on websites that it controls that states that "We've used high velocity crossflow in our Corncob I to treat landfill leachate in one step from black all the way to clear."

104.    Corncob, Inc.'s statement in the foregoing paragraph is literally false.

105.    The product, "Corncob I" does not actually exist, and the product referenced by Corncob, Inc. in this advertising material is, in reality, Clark Tech.'s proprietary Leachbuster® system.

106.    Further, on information and belief, Corncob, Inc. has never used "Corncob I" to treat landfill leachate, and the project referenced by Corncob, Inc. in this advertising material is, in reality, a project that used the Leachbuster® system.

107.    Corncob, Inc. also advertises that its corporate experience includes the installation of a Corncob I system at a trailer park in South Dakota.

108.     Corncob, Inc.'s statement regarding its purported corporate experience is literally false.

109.     In reality, the product referenced by Corncob, Inc. in this advertising material is Clark Tech.'s proprietary Leachbuster® system.

110.     Further, Corncob, Inc. has never tested or installed a "Corncob I" system at a trailer park in South Dakota.

111.     Corncob, Inc. has used and continues to use images of Clark Tech.'s Leachbuster® system in its advertising material without permission of Clark Tech.

112.     On September 26, 2016, representatives of Corncob, Inc. attended the Water Environmental Federation's Technical Exhibition and Conference ("WEFTEC") and gave a presentation to key industry representatives and prospective customers.

113.     Corncob, Inc. maintains a video of its WEFTEC presentation on websites it controls to promote the sale of its products.

114.     During this presentation, Corncob, Inc. represented to prospective customers that one of Corncob, Inc.'s purported "solutions" to water treatment was the "Corncob I."

115.     Since there is no such thing as a "Corncob I" system, Corncob, Inc.'s claim was false.

116.     Corncob, Inc. affirmatively asserts in certain of its advertising material, including an October 11, 2016 video on its YouTube website, that the images of Clark Tech.'s Leachbuster® system are a Corncob I system.

117.     Corncob, Inc. uses the Leachbuster® system images with the intention of confusing or deceiving potential wastewater treatment system customers into believing that Corncob, Inc. has a Corncob I system, when it does not.

118.    Corncob, Inc. uses the Leachbuster® system images with the intention of confusing or deceiving potential customers into believing that Corncob, Inc.'s Corncob II system is a second generation or improved version of its purported Corncob I system.

119.    Corncob, Inc. also advertises that its Corncob I system is "able to deliver drinkable water."  Since there is no such thing as a "Corncob I" system, Corncob, Inc.'s claim is literally false.

120.    As described above, Corncob, Inc. made one or more literally false statements of fact.

121.    Even if the above-described statements are not literally false, they are misleading because they falsely imply, among other things, that Corncob, Inc. has a product sales history and project implementation history that it does not have, that it has products that it does not really have (i.e., the Corncob I, which is really Clark Tech.'s proprietary Leachbuster® system), and that the Corncob II is a "second generation" or an improvement on the Leachbuster® system.

122.    The above-described statements were made in a commercial advertisement or promotion, specifically, print and video material on websites that Corncob, Inc. controls or can control, and such statements are clearly meant to influence persons or companies who purchase wastewater treatment systems to purchase a Corncob system as opposed to a competitive system, like the Leachbuster®.

123.    The above-described statements are likely to cause confusion, or to cause mistake, or to deceive customers of wastewater treatment solutions in a material way, including, without limitation, influencing their decision-making.

124.    The above-described statements were made in connection with interstate commerce because, among other things, they entered interstate commerce and the falsely advertised goods (i.e., the Corncob II products) have entered interstate commerce.

125.    Clark Tech. and Corncob, Inc. are direct competitors because they both market water and wastewater treatment products to the same customers and prospective customers.

126.    The above-described statements have caused and/or are likely to cause competitive or commercial injury to Clark Tech.  Specifically, but without limitation, Corncob, Inc.'s false and misleading statements have lessened, co-opted or converted the goodwill that Clark Tech. and its predecessors-in-interest have developed relating to the Leachbuster® system by, among other things, giving the false impression that the Leachbuster® system is not state-of-the-art technology, that Corncob, Inc.'s product, rather than the Leachbuster® system were successfully implemented in a landfill application and a private commercial project in South Dakota, and that Corncob, Inc. has more wastewater treatment solutions than Clark Tech.

127.    Corncob, Inc. and Pro-Equipment have attempted to sell one or more Leachbuster® systems under the false name "Corncob I" without authority from Clark Tech.

128.    Corncob, Inc. and Pro-Equipment have sold one or more Corncob II products and have attempted to sell others using the above-referenced literally false or misleading statements with the express purpose of  diverting sales that would otherwise go to Clark Tech. to Corncob, Inc. and Pro-Equipment.

129.    Clark Tech. has been irreparably harmed by such conduct and will also be irreparably harmed if such conduct is permitted to continue.

130.    Alternatively, Clark Tech. has been damaged by Corncob, Inc.'s conduct in an amount that exceeds $75,000, which shall be proven with more specificity at the time of trial.

## COUNT II
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

131.    Plaintiffs hereby incorporate by reference paragraphs 102-130 and realleges them as though fully set forth herein.

132.    Plaintiffs discovered in early 2017 that Pro-Equipment and/or Corncob, Inc. were commercially advertising and promoting a product they called Corncob I, which was, in reality, the Leachbuster® system.

133.    Plaintiffs also discovered that Pro-Equipment and/or Corncob, Inc. were using Clark Tech.'s trademark "Leachbuster" in certain of their commercial advertising and promotions.

134.    On May 19, 2017, Plaintiffs' attorney made a request to Douglas Hwang, an officer of both Corncob, Inc. and Pro-Equipment, that Defendants cease all unauthorized use of that trademark and to stop advertising that his companies had a product called "Corncob I" for sale.

135.    On May 31, 2017, Mr. Hwang informed Clark Tech. that he would take down all of the material that Clark Tech. asked him to remove.

136.    On June 19, 2017, Mr. Hwang sent Plaintiffs and email noting that he was "writing to confirm that materials online and in our product offering will not contain any Leachbuster trademark."

137.    Plaintiffs subsequently learned that, despite Hwang's prior representations, Corncob, Inc. and Pro-Equipment continued to advertise and promote the claim that they had a product for sale called Corncob I and also that they continued to use images of the Leachbuster® system and water treated by the Leachbuster® system in their advertising and promotion material, including that posted to websites under their control.

138.    Plaintiffs again requested that Corncob, Inc. and Pro-Equipment cease use of the Leachbuster® system images in their materials and to stop falsely claiming that they have or had

a product called "Corncob I," since the purported "Corncob I" is really Clark Tech.'s proprietary Leachbuster® system.

139.     Corncob, Inc. and Pro-Equipment responded through an attorney and represented that there were no references to the Leachbuster® trademark on websites they controlled.

140.     Corncob, Inc. and Pro-Equipment further represented that they would "remove references to Corncob I from websites and YouTube channels under their control, as well as other promotional material."

141.     Corncob, Inc. and Pro-Equipment further represented that they would not use marketing materials that "imply that Corncob II is a 'next generation' or an alternative to the 'Corncob I' system."

142.     Corncob, Inc. and Pro-Equipment further represented that they would "eliminate the use of CORNCOB I in their proportional material, including websites and other digital sources under their control…."

143.     Despite its representations, Corncob, Inc. continues to advertise and promote its purported Corncob I product and to imply that Corncob II is a "next generation" of or an alternative to the 'Corncob I' system."

144.     Despite its representations, since June 13, 2016, and continuing today, Corncob, Inc. has maintained commercial advertising and promotion material on its YouTube channel that identifies the purported existence of a "Corncob I" product.

145.     Despite its representations, since October 11, 2016, and continuing today, Corncob, Inc. has maintained commercial advertising and promotion material on its YouTube channel that shows alleged projects in which the purported Corncob I product was used and takes credit for

treating water at those locations. In reality, the projects shown were projects that used the Leachbuster® system.

146.     Plaintiffs have recently learned that Corncob, Inc. is still marketing and attempting to sell its purported "Corncob I" product to at least one wastewater treatment customer through its ongoing relationship with Apex.

147.     On information and belief, Pro-Equipment intends to manufacture purported "Corncob I" product, which is really a Leachbuster® system, for Corncob, Inc. if Corncob, Inc. is successful at selling the system to the customer.

148.     Defendants are attempting to pass off the actual Leachbuster® system as the Corncob I product.

149.     Defendants' advertising contains multiple misrepresentations regarding projects that purportedly involved a "Corncob I" product, when in reality no such projects exist.

150.     Defendants' conduct is likely to cause confusion by leading prospective purchasers of wastewater treatment systems to believe that the Corncob I system is associated or otherwise affiliated with Plaintiffs whose projects are shown in photos and referenced in advertising and also make it more likely that such customers will purchase Corncob, Inc.'s products.

151.     Plaintiffs have suffered injuries that cannot fully be compensated with money damages.

152.     Unless Defendants' conduct is enjoined, Plaintiffs will continue to suffer injuries that cannot fully be compensated with money damages.

153.     As such, Plaintiffs are entitled to preliminary and permanent injunctive relief requiring Defendants to cease all advertising, promotion and sales of their purported Corncob I product, remove from the internet all materials that relate to the purported Corncob I product, and

cease making claims that directly or indirectly indicate or imply that Corncob II is a variant, alternative or "next generation" version of Corncob I or the Leachbuster® system.

## COUNT III
## DECEPTIVE TRADE PRACTICE ACT CLAIM

154. Plaintiffs hereby incorporate by reference paragraphs 1-153 and realleges them as though fully set forth herein.

155. Corncob, Inc. published, disseminated, and/or placed before the public in Wisconsin, or caused, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public in Wisconsin, advertisements, announcements, statements and/or representations relating to the Corncob II product.

156. Corncob, Inc. published, disseminated, and/or placed the above-referenced advertisements, announcements, statements and/or representations relating to the Corncob II product before the public with the intent to induce and an obligation and/or to sell or distribute its Corncob II product and associated services.

157. Corncob, Inc.'s advertisements, announcements, statements and/or representations contained assertions, representations and/or statements of alleged fact that were and are untrue, deceptive and/or misleading.

158. Clark Tech. has suffered pecuniary loss in excess of $75,000 as a result of Corncob Inc.'s unlawful conduct and has incurred attorneys' fees to attempt to stop and prevent Corncob, Inc.'s illegal conduct.

## COUNT IV
## BREACH OF CONTRACT/WARRANTY

159. Plaintiffs hereby incorporate by reference paragraphs 1-149 and realleges them as though fully set forth herein.

160.     Plaintiffs reached enforceable agreements with Pro-Equipment pursuant to which Plaintiffs agreed, among other things, to use Pro-Equipment as their supplier of Leachbuster® systems in the United States, and Pro-Equipment agreed, among other things, that it would supply Leachbuster® systems when ordered by Plaintiffs, that it would not manufacture or supply the proprietary Leachbuster® system for, or sell such systems to, any person or company other than Plaintiffs, that it would not advertise the Leachbuster® system under any other name or brand, that it would keep confidential information provided to it by Plaintiffs strictly confidential, and that it would not circumvent Plaintiffs and work with Apex or other prospective customers of Plaintiffs, except with a written waiver from Plaintiffs.

161.     Pro-Equipment breached its agreements with Plaintiffs by, among other things, advertising the Leachbuster® system under the name "Corncob I," failing to keep confidential information provided to it by Plaintiffs strictly confidential, and circumventing Plaintiffs to work with Apex, other than as a subcontractor to Plaintiffs without Plaintiffs' consent.

162.     Pro-Equipment has also anticipatorily breached its agreements with Plaintiffs by, among other things, agreeing to manufacture, supply or sell to Apex a purported Corncob I system, which is in reality, a proprietary Leachbuster® system.

163.     Plaintiffs have been damaged as a result of Pro-Equipment's conduct, in an amount that exceeds $75,000 which shall be proven with more specificity at the time of trial.

164.     In addition, Apex claims that the Leachbuster® system utilized at the Kandiyohi County Project does not comport with the representations, guarantees and warranties made by Pro-Equipment to Clark Engineering.

165.     Clark Engineering denies that the Leachbuster® system utilized at the Kandiyohi County Project fails to comply with the representations made by Clark Engineering.

166. However, to the extent the Leachbuster® system utilized at the Kandiyohi County Project does not comport with the representations, guarantees and warranties made by Clark Engineering to Apex, or by Pro-Equipment to Clark Engineering, which Clark Engineering passed on to Apex in reliance on Pro-Equipment's representations, guarantees and warranties, Clark Engineering is entitled to recover its damages resulting from Pro-Equipment's conduct.

167. Further, Apex claims that it decided to substitute the Corncob II products for Clark Tech.'s Leachbuster® system at the NSC Project because the Leachbuster® system utilized at the Kandiyohi County Project does not comport with the representations, guarantees and warranties made by Pro-Equipment to Clark Engineering, which Clark Engineering passed on to Apex in reliance on Pro-Equipment's representations, guarantees and warranties.

168. Clark Engineering and Clark Tech. deny that Apex had any right to substitute the Corncob II products for Clark Tech.'s Leachbuster® system at the NSC Project.

169. However, to the extent Apex is permitted to avoid its obligation to purchase a Leachbuster® system at the NSC Project due in whole or in part to Pro-Equipment's breach of its representations, warranties or guarantees in connection with the Kandiyohi County Project, Plaintiffs will be damaged because they will lose their reasonably expected work and profits from the NSC Project, and Plaintiffs are entitled to recover such damages from Defendants.

## COUNT V
## BREACH OF GOOD FAITH AND FAIR DEALING

170. Plaintiffs hereby incorporate by reference paragraphs 1-169 and realleges them as though fully set forth herein.

171. Plaintiffs' agreements with Pro-Equipment each included, as a material term, a duty of good faith and fair dealing.

172.     Pro-Equipment breached its duty of good faith and fair dealing in its agreements with Clark Tech. by, among other things, improperly attempting to circumvent and cut Plaintiffs out of the NSC Project, the Monroe County Project and likely other projects, when it knew, among other things, that the projects had been secured in large part because of Plaintiffs' efforts.

173.     Pro-Equipment's conduct has caused and will cause significant injury and damage to Plaintiffs.

174.     As a result of Pro-Equipment's conduct, Plaintiffs have been damaged in an amount in excess of $75,000, exclusive of interest and costs, and which will be proven with more specificity at the trial in this matter.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE**
**CONTRACTUAL RELATIONSHIP**

175.     Plaintiffs hereby incorporate by reference paragraphs 1-174 and realleges them as though fully set forth herein.

176.     Plaintiffs had a contract or, alternatively, a prospective contractual relationship with Apex and NSC in connection with the NSC Project.

177.     Plaintiffs had a prospective contractual relationship with Apex and Monroe County in connection with the Monroe County Project.

178.     Defendants were each aware of Plaintiffs' contractual relationships or, alternatively, prospective contractual relationships with Apex, NSC, and Monroe County, Wisconsin at all relevant times.

179.     Defendants each intentionally interfered with Plaintiffs' contractual relationships or, alternatively, a prospective contractual relationships with Apex, NSC, and Monroe County, Wisconsin.

180. Among other things, Defendants used their insider knowledge of Clark Tech.'s confidential business strategies, pricing and other confidential and proprietary information to undercut Clark Tech.'s relationship with Apex and convince Apex to breach and abandon its contractual relationship with Clark Tech.

181. Additionally, Defendants used Clark Tech.'s and Clark Engineering's proprietary information and work product to give themselves an unfair "head start" in their effort to steal Plaintiffs' business opportunity with Apex and NSC and Plaintiffs' business opportunity with Apex and Monroe County, Wisconsin.

182. Defendants' interference with Plaintiffs' contractual relationship with Apex caused Plaintiffs' damages.

183. Plaintiffs' damages include, without limitation, their lost profits on the NSC Project and the attorneys' fees incurred after Defendants' conduct resulted in Plaintiffs' being thrust into litigation with Apex regarding the enforceability of Clark Tech.'s contract with Apex for the NSC Project.

184. Plaintiffs' damages also include, without limitation, its lost profits on the Monroe County Project.

185. Defendants lied to Plaintiffs about their efforts to interfere with Plaintiffs' contractual relationships with Apex.

186. For example, on October 16, 2017, Douglas Hwang expressly represented to Plaintiffs that "we are not working with Apex nor offering them Leachbuster, even though we don't have signed agreement. We see this as ethical considerations."

187. In reality, at the time Hwang made this representation for his companies, he and both of his companies were actively working directly with Apex on the NSC Project, the Monroe

County project, and other projects. Further, Defendants had been working directly with Apex since at least June 2017.

188. Defendants were not justified or privileged to interfere with Clark Tech.'s contractual relationship with Apex.

189. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount in excess of $75,000, exclusive of interest and costs, and which will be proven with more specificity at the trial in this matter.

## COUNT VII
## CONTRACTUAL INDEMNIFICATION

190. Clark Engineering hereby incorporate by reference paragraphs 1-189 and realleges them as though fully set forth herein.

191. Pro-Equipment contractually agreed to indemnify and save harmless Clark Engineering from and against, among other things, all liability others arising out of defects in the equipment, materials or other work supplied by Pro-Equipment in connection with the Kandiyohi County Project.

192. As demonstrated above, Clark Engineering has incurred damages, including attorneys' fees, in connection with Apex's claims that there were defects in the equipment, materials or other work supplied by Pro-Equipment in connection with the Kandiyohi County Project.

193. Clark Engineering is without fault or liability to Apex for any defects in the equipment, materials or other work supplied by Pro-Equipment in connection with the Kandiyohi County Project.

194.    As a result of Pro-Equipment's conduct, Clark Engineering has been damaged in an amount in excess of $75,000, exclusive of interest and costs, and which will be proven with more specificity at the trial in this matter.

WHEREFORE, Defendants Clark Technology, LLC and Clark Engineering Corporation respectfully request that the Court enter a judgment against Corncob, Inc. and Pro-Equipment, Inc. and in favor of Clark Tech., LLC and Clark Engineering Corporation as follows:

1.    Enjoining Pro-Equipment and Corncob, Inc. from working with or for Apex on the Monroe County Project, the NSC Project or the Kandiyohi County Project, except as a subcontractor to Plaintiffs;

2.    Enjoining Pro-Equipment and Corncob, Inc. from advertising, promoting and selling their purported Corncob I product, requiring the removal from the internet all materials that relate to the purported Corncob I product, and enjoining Pro-Equipment and Corncob, Inc. from making claims that directly or indirectly indicate or imply that Corncob II is a variant, alternative or "next generation" version of Corncob I or the Leachbuster® system;

3.    Requiring Pro-Equipment and Corncob, Inc. to engage in corrective advertising to remedy their historical and current false advertising;

4.    Awarding Plaintiffs monetary damages in amounts to be determined at trial;

5.    Awarding Plaintiffs' their costs and attorneys' fees, as and if permitted by law or the parties' contracts; and

6.    Granting Plaintiffs such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.


Dated: October 3, 2018

s/ *Michael E. Obermueller*
John C. Holper, Esq.
Michael E. Obermueller, Esq.
Attorneys for Plaintiffs
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
E-Mail: jholper@winthrop.com
E-Mail: mobermueller@winthrop.com

15771646v2